# 23-589

## United States Court of Appeals for the Second Circuit

MICHAEL DAVIS-GUIDER,
*Plaintiff-Counter-Defendant-Appellant,*

– v.–

CITY OF TROY; RONALD FOUNTAIN, Individually;
DANIELLE COONRADT, Individually; CHARLES MCDONALD, Individually; TIM
COLANERI, Individually,
*Defendants-Cross-Claimants-Counter-Claimants-Appellees,*

RENSSELAER COUNTY; MICHAEL SIKIRICA, Individually,
*Defendants-Cross-Defendants-Counter-Claimants-Appellees,*

ADAM R. MASON, Individually,
*Defendant-Cross-Claimant-Counter-Claimant,*

JOEL ABELOVE, Individually,
*Defendant-Cross-Defendant-Counter-Claimant,*

JOHN AND JANE DOE 1-10, INDIVIDUALLY (THE NAMES JOHN AND JANE DOE
BEING FICTITIOUS, AS THE TRUE NAMES ARE PRESENTLY UNKNOWN),
MICHAEL E. PARROW, ANDRA ACKERMAN,
*Defendants.*

On Appeal from the United States District Court
for the Northern District of New York
Case No. 1:17-cv-1290 (FJS/DJS)

## REPLY BRIEF OF APPELLANT MICHAEL DAVIS-GUIDER

Max Rodriguez
LAW OFFICE OF MAX RODRIGUEZ PLLC
575 5th Avenue, 14th Floor
New York, NY 10017
(646) 741-5167
*Counsel for Appellant*

Brett H. Klein
BRETT H. KLEIN, ESQ. PLLC
305 Broadway, Suite 600
New York, NY 10007
(212) 335-0132
*Counsel for Appellant*

# TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

ARGUMENT ....................................................................... 3

    I.    Defendants Are Not Entitled to Summary Judgment on Plaintiff's Fair-Trial Claim .................................................. 3

    II.   A triable issue exists as to whether Defendants fabricated evidence ........................................................................ 4

        A.   A jury could reasonably find that Coonradt provided false evidence .............................................................. 4

        B.   A jury could reasonably find Fountain provided false evidence .......................................................................... 6

        C.   A jury could reasonably find that Sikirica provided false evidence .............................................................. 8

        D.   A jury could reasonably infer that Defendants knowingly fabricated their false evidence ................... 13

    III.  A triable issue exists as to whether Defendants' fabrications were material ........................................................................ 17

    IV.  Defendants Are Not Entitled to Summary Judgment on Plaintiff's Malicious-Prosecution Claim ............................. 18

    V.    A triable issue exists as to whether Defendants initiated the prosecution ........................................................................ 19

        A.   A jury could reasonably find that Coonradt initiated the prosecution .......................................................... 20

        B.   A jury could reasonably find that Sikirica initiated the prosecution .............................................................. 21

    VI.  A triable issue exists as to the lack of probable cause ........ 22

        A.   Immunity for grand jury testimony does not prevent Plaintiff from demonstrating that the indictment was tainted by fabricated evidence ..................................... 23

        B.   Sikirica cannot avoid responsibility for his own misleading omissions by pointing his finger at the district attorney ......................................................... 27

VII.    A triable issue exists as to whether Defendants acted with
        malice ..................................................................................27

VIII.   Because Summary Judgment on Plaintiff's Fair-Trial and
        Malicious-Prosecution Claims Was Improper, It Is Also
        Improper on Plaintiff's *Monell* and Conspiracy Claims .......29

IX.     Qualified Immunity Cannot Be Awarded on Summary
        Judgment Unless a Jury Could Not Find Any Conduct that
        Would Be Unreasonable ......................................................31

CONCLUSION.......................................................................................32

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. v. Hamilton Beach/Proctor Silex,*
   473 F.3d 450 (2d Cir. 2007) ........................................................................12

*Amaker v. Foley,*
   274 F.3d 677 (2d Cir. 2001) ........................................................................30

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986). ......................................................................................2

*Ashley v. City of New York,*
   992 F.3d 128 (2d Cir. 2021) ..........................................................................3

*Barrows v. Brinker Restaurant Corp.,*
   36 F.4th 45 (2d Cir. 2022) .............................................................................5

*Bellamy v. City of New York,*
   914 F.3d 727 (2d Cir. 2019) ..........................................................................5

*Bertuglia v. City of New York,*
   133 F.Supp.3d 608 (S.D.N.Y. 2015) ...........................................................21

*Boyd v. City of New York,*
   336 F.3d 72 (2d Cir. 2003).............................................................................28

*Cameron v. City of New York,*
   598 F.3d 50 (2d Cir. 2010).............................................................................22

*Coggins v. Buonora,*
   776 F.3d 108 (2d Cir. 2015) ..................................................................23, 26

*Dufort v. City of New York,*
   874 F .3d 338 (2d Cir. 2017) ...................................................................24, 25

*First Nat. Bank of Ariz. v. Cities Service Co.,*
   391 U.S. 253 (1968).........................................................................................2

*Frost v. N.Y.C. Police Dept.,*
   980 F.3d 231 (2d Cir. 2020) ...................................................................18, 20

*Isaac v. City of New York,*
2020 WL 1694300 (E.D.N.Y. Apr. 6, 2020)................................................5

*Kee v. City of New York,*
12 F.4th 150 (2d Cir. 2021) .....................................................................2, 29

*Ketcham v. City of Mount Vernon,*
992 F.3d 144 (2d Cir. 2021) ........................................................................5

*LaSalle Bank Nat. Ass'n v. Nomura Asset Capital,*
424 F.3d 195 (2d Cir. 2005) .........................................................................2

*Lowth v. Town of Cheektowaga,*
82 F.3d 563 (2d Cir. 1996).........................................................................29

*Manganiello v. City of New York,*
612 F.3d 149 (2d Cir. 2010)........................................................................19

*McCarthy v. SEC,*
406 F.3 179 (2d Cir. 2005).........................................................................30

*Milkovich v. Lorain Journal Co.,*
497 U.S. 1 (1990) .......................................................................................12

*Morrissey v. Nat'l Maritime Union,*
544 F.2d 19 (2d Cir. 1976).........................................................................28

*Morse v. Fusto,*
804 F.3d 538 (2d Cir. 2015) .............................................................9, 14, 32

*N. Oil Co. v. Socony Mobil Oil Co.,*
347 F.2d 81 (2d Cir. 1965).........................................................................28

*Pinsky v. Duncan,*
79 F.3d 306 (2d Cir. 1996).........................................................................28

*Rehberg v. Paulk,*
132 S.Ct. 1497 (2012) ..........................................................................passim

*Reisterer v. Lee Sum,*
94 F. 343 (2d Cir. 1899) .............................................................................28

*Ricciuti v. NYC Transit Authority,*
  124 F.3d 123 (2d Cir. 1997) ............................................................1, 20, 28

*Rivera v. Rochester Genesee Regional Transp. Auth.,*
  743 F.3d 11 (2d Cir. 2011)...................................................................3

*Rule v. Brine, Inc.,*
  85 F.3d 1002 (2d Cir. 1996) ................................................................2

*Savino v. City of New York,*
  331 F.3d 63 (2d Cir. 2003)..................................................................22

*Tolan v. Cotton,*
  572 U.S. 650 (2014).............................................................................31

*Torres v. Jones,*
  26 N.Y.3d 742 (2016)......................................................................23, 28

*Townes v. City of New York,*
  176 F.3d 138 (2d Cir. 1999) ...............................................................21

*Zahrey v. Coffey,*
  221 F.3d 342 (2d Cir. 2000) ...............................................................22

**Rules**

Fed. R. Evid. 702 ...................................................................................12

## <u>INTRODUCTION</u>

> Plaintiff[] allege[s] that the defendant[s] lied and fabricated evidence. While we do not know whether the accusations can be sustained, we do know that such accusations must be carefully reviewed. … Courts must ensure that such serious accusations receive appropriate scrutiny lest our Court appears to endorse such official misconduct, which would weaken the public's respect for the administration of justice.

*Ricciuti v. NYC Transit Authority*, 124 F.3d 123, 125 (2d Cir. 1997).

Plaintiff-Appellant Michael Davis-Guider ("Plaintiff") was indicted for manslaughter in the death of his partner's two-year-old daughter, V.D., based largely on evidence fabricated by Troy Police Department officers Danielle Coonradt and Ronald Fountain, and Rensselaer County medical examiner Michael Sikirica. After being acquitted at trial, Plaintiff filed this action for, *inter alia*, denial of a fair trial and malicious prosecution against Coonradt, Fountain, and the City of Troy (collectively, "the City"), as well as Sikirica and Rensselaer County (collectively, "the County"). Defendants moved for summary judgment and, in an opinion heavy with the District Court's personal views of the evidence and light on binding precedent, the District Court granted Defendants' motions on each of Plaintiff's claims.

"[T]he summary judgment technique tempts judges to take over the jury trial of cases, thus depriving parties of their constitutional

right to trial by jury." *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 305 (1968) (Black J., dissenting).

To avoid infringing on the jury's role, summary judgment is appropriate only where no reasonable jury could find for the non-moving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

In considering a motion for summary judgment, a court must "constru[e] the evidence in the light most favorable to the nonmoving party, … drawing all inferences and resolving all ambiguities in [their] favor…." *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital,* 424 F.3d 195, 205 (2d Cir. 2005) (cleaned up). A court must also "disregard all evidence favorable to the moving party that the jury is not required to believe." *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). Instead, a court "must assume that the jury will credit plaintiff's version of the events," *Kee*, 12 F.4th at 171, and not "engage in searching, skeptical analyses of parties' testimony in opposition to

2

summary judgment." *Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2011).

Despite these clear standards, the District Court repeatedly weighed evidence, assessed credibility, and rejected permissible inferences. Defendants, seeking to defend the decision below, make similarly improper arguments, *see* City Appellees' Brief ("CityBr.") 11-13, 21-25, 32; County Appellees' Brief ("CountyBr.") 11-18, 21-23, 25, 28-29, and exhort this Court to do the same.

The Court should decline to put its imprimatur on such a flawed decision and elect to correct the District Court's errors instead.

## ARGUMENT

### I.    Defendants Are Not Entitled to Summary Judgment on Plaintiff's Fair-Trial Claim

To state a claim for denial of a fair trial due to the creation of fabricated evidence, "a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021).

3

In his opening brief, Plaintiff explained that he had presented sufficient evidence to raise a genuine dispute as to whether defendants Sikirica, Coonradt, and Fountain fabricated evidence against him. Plaintiff-Appellant's Brief ("P.Br.") 35-40. In response, Defendants argue that Plaintiff has mischaracterized the record and failed to present evidence that the complained-of statements were false. *See* City Br. 20-26; County Br. 20-23.

As explained below, Defendants' disagreements with Plaintiff's characterization of the evidence simply reflect the factual dispute that makes summary judgment inappropriate. Moreover, the circumstances of the allegedly false statements would allow a jury to reasonably infer that they were fabricated.

## II. A triable issue exists as to whether Defendants fabricated evidence

### A. <u>A jury could reasonably find that Coonradt provided false evidence</u>

In his opening brief, Plaintiff pointed to evidence contradicting Coonradt's claim that Plaintiff had said he attempted to wake V.D. at 11:00 a.m., approximately two hours before he called emergency services. *See* P. Br. 8, 19.

4

The City argues in response that the Court should ignore Plaintiff's "unsupported, self-serving conjecture" and that other evidence supports Coonradt's version of events. CityBr. 11-13. Such arguments about credibility and the weight of the evidence, however, are inappropriate at the summary judgment stage. It is for the jury alone to decide what weight to give Plaintiff's testimony. And, contrary to the City's position, this Court has said that a "§ 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact." *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) (citing *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016)); *accord Ketcham v. City of Mount Vernon*, 992 F.3d 144, 150 (2d Cir. 2021); *Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45, 50-51 (2d Cir. 2022).

The City's citation to *Isaac v. City of New York*, CityBr. 13, is unavailing. In that case, the Plaintiff's testimony was insufficient to create a triable issue as to whether the defendant fabricated testimony because the plaintiff lacked personal knowledge as to the substance of the defendant's testimony. *See* 2020 WL 1694300, at *6 (E.D.N.Y. Apr. 6, 2020). In contrast, Plaintiff has personal knowledge of what he said to

Coonradt and would be permitted to testify to that at trial. The same is also true with respect to Fountain's fabricated statements.

B.   A jury could reasonably find Fountain provided false evidence

Plaintiff also pointed to evidence contradicting Fountain's statements (i) that it was not unusual for V.D. to wake up tired (suggesting that V.D.'s tiredness on the day she died was not indicative of a medical issue on the day she died); (ii) that V.D.'s bed was neat and made up, thereby casting doubt on Plaintiff's claim to have attempted CPR; and (iii) that Plaintiff's demeanor was calm, subdued, and unlike what would be expected when a person discovers that a small child in their care had stopped breathing. P.Br. 15-16.

The City again responds by attempting to bolster Fountain's testimony that it was a "normal occurrence for [V.D.] to be a little tired" with reference to other testimony that does not, in fact, say the same thing. CityBr. 21-22.[1] What they cannot do, however, is show that no

---

[1] The District Court did the same, finding that no genuine issue of fact existed as to the falsity of Fountain's statement that "it was a *normal occurrence* for [V.D.] to be a little tired" because of other evidence that V.D. appeared "a little sluggish" or "extremely tired" *on that particular day*. *See* SPA 18 (emphasis added). In doing so, the court failed to

evidence exists from which a jury could conclude that Fountain's testimony was false, as his statement is directly contradicted by the testimony of both Plaintiff and V.D.'s mother. *See* P.Br. 15 (citing App'x 1468, 1530–1531, 1669).

With respect to his testimony about Plaintiff's demeanor, the City again points to other evidence for support. CityBr. 24-25. But even if testimony from other police officers does not establish a genuine dispute of fact as to the falsity of Fountain's testimony, other evidence certainly does. *See* App'x 1668, 1795, 1797.

The City also tries to characterize Fountain's statement about the condition of V.D.'s bed as a matter of personal opinion which cannot be considered false. CityBr. 22-24. But it is not the fact "that [Fountain's] statement gave the impression that [Plaintiff] did not perform CPR" which "rais[es] a question of fact for a jury to resolve," *id.* at 24, but rather that Fountain had falsely stated the factual basis for this opinion, to wit:

> Her bedsheets, it - - it kind of looked like made. There was a little indentation on the pillow where the head was, and then the sheet was perfect, and the - - and the blanket over the

---

apprehend that V.D.'s condition on the day she passed is material specifically because it was out of the ordinary.

sheet was really neat. It wasn't like fussed up or messed up or anything. It was all kind of very neat, like somebody had just got out of bed and pulled everything back up.

App'x 1853.

Contrary to the City and the District Court, the fact that Fountain qualified his opinion about whether Plaintiff attempted CPR does not render the factual underpinnings for that opinion unfalsifiable or reduce the factual dispute to a mere disagreement. *See* CityBr. 24; SPA 19-20. Fountain's statements that V.D.'s bed was "very neat" and not "fussed up or messed up," that the sheet was "perfect," and the blanket was "really neat" are reports of his observations, not opinions—reports that are certainly capable of being true or false. And, as Plaintiff has explained, the inconsistency between Fountain's statements and other evidence—in this instance, a photo of V.D.'s bed—created, at minimum, a triable issue of fact. P.Br. 16 (citing App'x 1477, 1794).

C.   <u>A jury could reasonably find that Sikirica provided false evidence</u>

In his opening brief, Plaintiff pointed to some of the evidence showing that Sikirica had fabricated elements of his autopsy report and other testimony, including by (i) connecting the cause of death to attempted CPR "by a large adult" because he had seen a video of

8

Plaintiff—a large man—demonstrate how he attempted to perform CPR on V.D.; (ii) omitting from his report consideration of the thousands of CPR compressions performed by EMS and hospital personnel; and (iii) manipulating his conclusion that V.D.'s death was a homicide based on his suspicion of Plaintiff, when he would not have reached that conclusion if he had believed the injuries were caused by medical personnel. P.Br. 35-36; *see also id*. at 3-4, 10-19.

Nevertheless, the County responds by claiming that Plaintiff "does not, and cannot, point to any evidence establishing that Dr. Sikirica falsified his autopsy report or otherwise testified falsely," and instead, echoing the District Court, attempts to reduce the issue to one of differing medical opinions. *See* CountyBr. 21-22; *see also* SPA 22-24.[2]

The conduct that gives rise to a fair-trial claim is not limited to providing evidence containing affirmative falsehoods, but also includes misrepresenting or withholding evidence, or making misleading omissions. *See Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015) (citing

---

[2] The District Court denied the County's motion to dismiss Plaintiff's fair-trial claim against Sikirica on the basis that Plaintiff had alleged precisely these omissions that are now capable of proof in the record. ECF 35 at 14-15. Defendants cannot argue that they are insufficient to create a triable issue as to fabrication.

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010)). And

Plaintiff has certainly pointed to evidence from which a jury could

conclude that Sikirica misrepresented, withheld, or omitted material

information, thereby rendering his evidence false.[3] Even the District

Court acknowledged that "Plaintiff has raised questions of fact about

the correctness of statements or medical conclusions reached by

Sikirica." SPA 24.

For example, while Sikirica admitted that the CPR technique

which he saw Plaintiff demonstrate on video could have caused V.D.'s

injuries, he stated that the amount of blood in her abdomen could not

have been caused by the four or five compressions which Plaintiff told

investigators that he had performed because each compression could

have squeezed around 10 milliliters of blood from her heart, at most.

According to Sikirica, this "suggest[ed] that she was alive afterwards."

App'x 1833-34.[4] Sikirica, however, omitted both the fact that V.D.'s

---

[3] Evidence, including additional examples of false or misleading evidence, from which a jury could conclude that Sikirica did so knowingly is discussed further in Section D, *infra*.

[4] The County is therefore incorrect that Plaintiff's characterization of Sikirica's testimony as "stating that the amount of blood was not caused by Plaintiff['s] CPR attempt" is inaccurate. *See* CountyBr. 12.

stomach was not distended when they arrived, meaning that the volume of blood upon which Sikirica relied did not accumulate in V.D.'s abdomen until later, *see* App'x 1962, and the 6,000 additional compressions performed by medical personnel, thereby omitting an innocent explanation for the volume of blood found in V.D.'s abdomen. *See* P.Br. 7, 13, 31. Based on these misleading omissions and other false statements, discussed further below, Sikirica also reached the false conclusion that V.D.'s death was a homicide, thereby setting Plaintiff's prosecution in motion.

Plaintiff also pointed to Sikirica's false testimony that V.D. had electrical activity in her heart when EMS personnel arrived at the house. P.Br. 18. In response, while the County acknowledges Sikirica's testimony that when EMS arrived V.D. "was cool to the touch, she was unresponsive, but they did detect, supposedly, some electrical activity in her, so they did transport her to the hospital," it improperly argues that "[a]t most this was a misstatement" and should be weighed against a

different version of events to which a paramedic testified. CountyBr. 14.[5]

The County, like the District Court, also wrongly rejects Plaintiff's reliance on expert testimony as evidence of the falsity of Sikirica's conclusions. But this is not simply a case of "differences in medical opinions." CountyBr. 15; SPA 23-24. As the Supreme Court has explained in the defamation context, an opinion may be false if "the facts upon which [the speaker] bases his opinion … are either incorrect or incomplete, or if his assessment of them is erroneous…." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990); *see also* Fed. R. Evid. 702(b)-(d) (requiring an expert opinion to be "based on sufficient facts or data," and "reflect[] a reliable application of [reliable] principles and methods"). And the opinions of Plaintiff's experts are permissible bases for a jury to conclude that Sikirica made false statements. *See Allstate Ins. v. Hamilton Beach/Proctor Silex*, 473 F.3d 450, 459 (2d Cir. 2007) ("Plaintiffs' expert testimony … was based on evidence" and "should

---

[5] The County's argument also ignores the fact that Sikirica relied on the supposed presence of cardiac activity to determine when V.D.'s injuries occurred. *See* P.Br. 18 (citing App'x 1479, 1835–1836).

have been considered in connection with the summary judgment motion.").[6]

Contrary to the County's assertion, *see* CountyBr. 15, 21, Plaintiff's experts did, in fact, opine that Sikirica omitted critical information, deviated from accepted forensic practices, and made false statements in his autopsy report. For example, Dr. Teas testified that it was evident from slides of V.D.'s liver cells that she was no longer alive at the time of her liver injuries, App'x 1636-43, and that the medical evidence should have caused Sikirica to investigate the cause of V.D.'s death further. App'x 1643-44. Dr. Maloney also explained that under "the latest recommendations of the National Association of Medical Examiners," Sikirica should have classified V.D.'s death as Sudden Unexplained Death in Childhood with Intrinsic Factors (hypothyroidism). App'x 1962-63.

    D.   <u>A jury could reasonably infer that Defendants knowingly fabricated their false evidence</u>

---

[6] While the County asserts that "[p]recedent does not support a finding that a disagreement among medical experts as to cause of death … rises to the level of fabricated evidence," the only case from this Court that they cite provides no support for that claim. *See* CountyBr. 23 (citing *Garnett*, 838 F.3d at 280).

Beyond the evidence that Defendants gave false evidence, there is also evidence from which a reasonable jury could conclude that Defendants, at minimum, knew of such falsity.

Defendants assert that "[c]ourts have recognized that testimony that is merely incorrect or disputed does not qualify as 'fabricated,' rather the evidence must be 'both false and likely to influence a jury's decision...to serve as a basis for a denial of the right to a fair trial claim.'" CountyBr. 21; CityBr. 19-20. None of the cited cases, however, stand for that proposition. Rather, "incorrect" evidence and even material misrepresentations or omissions can fulfill the fabrication element of a fair-trial claim, if it is provided knowingly. *See, e.g.*, *Morse*, 804 F.3d at 547–48.

With respect to Coonradt and Fountain, a jury could infer knowledge from the circumstances and the nature of the false evidence. For example, if Plaintiff did not tell Coonradt that he woke up at 11:00 a.m., it would be reasonable to infer that she fabricated this statement because (i) she knew what he actually said; (ii) she reported the false statement on the date of the incident, such that it would have been

14

fresh in her mind; and (iii) there is no readily available innocent explanation.

Similarly, with respect to Fountain, a jury could infer that he knew that his description of V.D.'s bed was false because he knew what the bed actually looked like and there is no readily available innocent explanation. A jury could also infer that he knew his statement that it was a "normal occurrence for [V.D.] to be a little tired" was false because he lacked knowledge of any facts that might support this claim. Furthermore, Fountain had already decided that Plaintiff was responsible for V.D.'s death from the fact that he would have told Sikirica the following day that "we had a house with a dead person, and he [Davis] was the only one home and we don't know anything." P.Br. 10. Sikirica had also told Fountain that he intended to rule the death a homicide, and that Fountain was under pressure to close the case. *Id.* at 11. Fountain therefore had motive to bolster the case against Plaintiff with false evidence that would undermine Plaintiff's story that he found V.D. unconscious and attempted to resuscitate her.

As for Sikirica, there is extensive evidence from which a jury could reasonably infer that he knew, or even intended, that the evidence he

15

gave was false or misleading. Multiple pieces of evidence suggest that Sikirica's conclusions as to V.D.'s cause of death were driven by the outcome he wanted to reach, rather than the actual medical evidence, including:

- Fountain's statement to Sikirica at the autopsy that "we had a house with a dead person, and [Plaintiff] was the only one home and we don't know anything," which would have alerted Sikirica to the fact that police suspected Plaintiff's involvement in V.D.'s death. App'x 1472, 1728-29.

- His statement nearly five months before issuing his autopsy report that he intended to rule the death a homicide, even though test results that could have pointed towards natural causes of death remained outstanding. *See* App'x 1472, 1681-82.

- Sikirica's failures to conduct the further investigations indicated by the medical evidence, *see* App'x 1643-44, and to classify V.D.'s death as Sudden Unexplained Death in Childhood with Intrinsic Factors (hypothyroidism), per the recommendations of the National Association of Medical Examiners. App'x 1962-63.

- Sikirica's belated admissions that "it's possible" V.D. died of natural causes, App'x 1920 and that he was unable to dispute that V.D. was already "unresponsive, possibly in cardiac arrest" prior to Plaintiff's attempted CPR. App'x 1908-09.

Fabrication could also be inferred from Sikirica's inconsistent and contradictory stories, including:

- Listing in his report "reported history of attempted cardiopulmonary resuscitation by a large adult," App'x 1789; then testifying that V.D.'s injuries could not have been caused by CPR (or otherwise have been accidental), App'x 1885-86; then changing his testimony to state that V.D.'s injuries *could* have been caused

16

by Plaintiff's attempts at CPR, App'x 1833-34, 1615; and later speculating that some unknown earlier action by Plaintiff had actually caused V.D.'s death. App'x 1480, 1614, 1831–1832.

- Testifying at trial that he hadn't relied on the May 2nd video of Plaintiff demonstrating his attempts at CPR, App'x 1614, then later admitting that he had. App'x 1916, 1926.

Perhaps most damningly, Sikirica admitted that he would not normally consider a death "at the hands of another" to be a homicide when it occurs "during [a] resuscitative process" and the victim "is already in extremis," and that, had V.D.'s same injuries been caused by medical personnel, "[i]t would have probably been left undetermined or accidental." App'x 1935-36. While the County asserts that Plaintiff "fail[ed] to consider that Plaintiff's counsel posed a hypothetical to Dr. Sikirica," CountyBr. 22, it fails to explain the supposed import of this. There is none.

## III. A triable issue exists as to whether Defendants' fabrications were material

With respect to whether Coonradt and Fountain's fabrications were material, the City states only that Plaintiff "has made no effort to argue that the alleged fabricated statements affected the outcome of the criminal trial." CityBr. 26-27. This is not the standard.[7] Rather, it is

---

[7] Nor is it factually accurate. *See* P.Br. 23-24, 29, 33.

sufficient if the fabricated evidence "would be likely to influence a jury's decision, *were that evidence presented to the jury*." *Frost v. N.Y.C. Police Dept.*, 980 F.3d 231, 250 (2d Cir. 2020) (emphasis in original).

Here, Coonradt and Fountain's fabrications were likely to influence a jury, not only "because they 'served to undermine [his] consistent explanation of the incident,'" SPA 22, but also because they would have suggested that Plaintiff was unable to account for a period of time, had not attempted to resuscitate V.D., and did not have the expected emotional response, as well as suggesting that V.D. experienced no unusual physical symptoms on her final morning.

As for Sikirica, the District Court never found that his fabrications were immaterial and the County did not address the materiality element in its brief. Nevertheless, Sikirica's fabrications were material because they formed the factual basis for the prosecution.

## IV. Defendants Are Not Entitled to Summary Judgment on Plaintiff's Malicious Prosecution Claim

To succeed on a § 1983 malicious prosecution claim in New York, a plaintiff must show a violation of their Fourth Amendment rights plus "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of

probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello*, 612 F.3d at 160-61.

In the proceedings below, the district court found that Plaintiff had not established triable issues as to initiation of the prosecution (with respect to Coonradt alone) or malice, generally, and that immunity for grand jury testimony means that Plaintiff was unable to overcome the presumption of probable cause that arises from a grand jury indictment.[8]

## V.  A triable issue exists as to whether Defendants initiated the prosecution

With respect to initiation, the City argues that Coonradt was not sufficiently involved to have initiated the prosecution, but makes no argument on the initiation element with respect to Fountain. The County argues that Sikirica "did not make the decision to arrest or prosecute" Plaintiff, as "the determination as to whether a case is

---

[8] In a footnote, the District Court also dismissed Plaintiff's state-law malicious prosecution claim on the basis that the state and federal claims are identical. *See* SPA 14 n.5 Accordingly, if the Court finds that summary judgment was inappropriate on Plaintiff's § 1983 malicious-prosecution claim, it should conclude the same about the parallel state-law claim.

prosecutable is a legal determination only" and "not a medical one made by Dr. Sikirica." CountyBr. 18.

A. <u>A jury could reasonably find that Coonradt initiated the prosecution</u>

The City argues that Coonradt's involvement in the investigation was insufficient to find that she "initiated" the prosecution of Plaintiff. *See* CityBr. 10-11. In *Ricciuti*, however, this Court explained that "a jury could find that [the defendant officer] played a role in initiating the prosecution by preparing the alleged false confession and forwarding it to prosecutors." 124 F.3d at 130; *see also id.* at 125 ("a jury could find that certain of the individual police officers prepared a false report and initiated a prosecution of plaintiffs predicated on this manufactured evidence."); *Frost*, 980 F.3d at 242 (referring with approval to the district court's "acknowledge[ment] that police officers can initiate criminal proceedings by 'creat[ing] false information and forward[ing] it to prosecutors'") (second and third alterations in the original).

As explained above, because there is sufficient evidence for a jury to conclude that Coonradt fabricated evidence, a jury could also reasonably conclude that she "initiated" the prosecution of Plaintiff.

20

B. <u>A jury could reasonably find that Sikirica initiated the prosecution</u>

Just as a jury could find that Coonradt initiated the prosecution by "creating false information and forwarding it to prosecutors," so, too, with Sikirica.[9] Indeed, without the fabricated and misleading conclusion in Sikirica's autopsy report that V.D.'s death was a homicide, there would never have been a prosecution in the first place.

The County also argues Sikirica did not initiate the prosecution because the decision to prosecute was made by the district attorney. This argument ignores the fact that "[t]here is an exception [to the rule that a superseding cause for an indictment breaks the causal chain] for a defendant who has fabricated evidence or provided false testimony." *Bertuglia v. City of New York,* 133 F.Supp.3d 608, 630 (S.D.N.Y. 2015); *see also, e.g., Townes v. City of New York,* 176 F.3d 138, 147 (2d Cir. 1999). Rather, "in malicious prosecution actions alleging that a [defendant] provided false information to a prosecutor, what prosecutors do subsequently has *no effect whatsoever* on the [defendant's] initial, potentially tortious behavior." *Cameron v. City of New York,* 598 F.3d

---

[9] Unlike Coonradt, however, the District Court did not find for Sikirica on the initiation element.

50, 63 (2d Cir. 2010) (emphasis added) (*citing Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007); *Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000)).

## VI.   A triable issue exists as to the lack of probable cause

"[I]ndictment by grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino v. City of New York*, 331 F.3d 63, 83 (2d Cir. 2003) (emphasis in original) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)). As Plaintiff explained in his opening brief, the fabricated conclusions and misleading omissions in Sikirica's autopsy report were central to the grand jury's indictment. P.Br. 31-32. Plaintiff also referred to Sikirica's testimony before the grand jury as "valuable context" illustrating the "essential role played by Sikirica's autopsy report" in the indictment. *Id.*

Defendants assert that Plaintiff's arguments are barred by *Rehberg v. Paulk*, 132 S.Ct. 1497, 1506-07 (2012), which granted absolute immunity for grand jury testimony, as well as for "preparatory activity, such as a preliminary discussion in which the witness relays

the substance of his intended testimony." *See* CityBr. 15-17; CountyBr.

11. Defendants, however, overstate the law and grossly mischaracterize

Plaintiff's arguments.

    A. <u>Immunity for grand jury testimony does not prevent Plaintiff from demonstrating that the indictment was tainted by fabricated evidence</u>

Contrary to Defendants' suggestion, *see* CityBr. 15-16; CountyBr.

11, it remains possible post-*Rehberg* to rebut the presumption of

probable cause arising out of a grand jury indictment. *See, e.g.*, *Torres v.*

*Jones,* 26 N.Y.3d 742, 768-69 (2016) ("[T]he evidence here that the

detectives … made a fake confession, attributed the confession to

plaintiff and gave it to prosecutors could, if credited, overcome the

presumption of probable cause arising from plaintiff's indictment.").

In *Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015), the plaintiff

was arrested and charged with various felonies based on allegations

made by two officers in police paperwork as well as verbally to the

grand jury. This Court, applying *Rehberg*, upheld the denial of

immunity from the plaintiff's § 1983 claims against one officer because

the claims were based on alleged misconduct "prior to and independent

of his perjurious grand jury appearance." *Id.* at 112-13. The Court

23

explained that when a defendant "claims absolute immunity for his grand jury testimony under *Rehberg*, the court should determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony. If the claim exists independently of the grand jury testimony, it is not 'based on' that testimony, as that term is used in *Rehberg*." *Id.* at 113.

Immunity for grand jury testimony does not prohibit a court from accounting for what the grand jury was told, in order to determine whether the indictment was procured by bad faith conduct. Thus, in *Dufort v. City of New York*, this Court considered whether the defendants had "misled the grand jury and the prosecutors by either withholding or misrepresenting evidence," as follows:

> With respect to the indictment, the record indicates that *the only direct evidence presented to the grand jury* linking Dufort directly to the attack was Park's eyewitness identification. … More importantly, the record reflects (and the Defendants do not contest) that *the grand jury was simply told* that Park identified Dufort as an assailant without being informed of the limited nature of Park's identification. … *Nor was the grand jury informed that* Dufort was the only suspect in the lineup wearing a maroon sweatshirt. Given the critical nature of Park's testimony to the case against Dufort, these omissions were glaring and easily could have affected the grand jury's decision.

874 F.3d 338, 353 (2d Cir. 2017) (emphasis added) (internal citation omitted).[10]

Plaintiff's showing that Defendants provided false and misleading evidence to prosecutors and the grand jury therefore properly presents "a genuine issue of material fact regarding whether the Defendants' conduct rose to the requisite level of bad faith to rebut the presumption of probable cause ordinarily created by a grand jury indictment." *Id.*

To argue that Plaintiff's claims are "based on" grand jury testimony, Defendants blatantly mischaracterize Plaintiff's arguments as relying entirely on the falsity of Fountain and Sikirica's grand jury testimony, *see* CityBr. 15; CountyBr. 11,[11] when they are actually "based

---

[10] The City is therefore incorrect that "It is settled law that, '[the] plaintiff cannot use this argument to support his § 1983 claim'" because of *Rehberg*. CityBr. 15-16 (alterations in the original) (quoting *Bonds v. City of New York*, 2014 U.S. Dist. LEXIS 74185, at *22 (E.D.N.Y. 2014)). Indeed, "settled law" rarely requires citation to an unpublished district court opinion.

[11] While Plaintiff's probable-cause arguments are found at pp. 30-34 of his opening brief, Defendants' responses are instead directed to Plaintiff's statement of facts. *See* CityBr. 15 (citing P.Br. 15 (p. 21 of the PDF)); CountyBr. 11-14 (citing P.Br. 16-18). In only one instance do either the City or County point to something that Plaintiff actually said about probable cause, *see* CityBr. 16 (citing P.Br. 34 n.10 (p. 39 of the PDF, erroneously cited as p. 40), although the City fails to explain what is wrong with Plaintiff's footnote. *See id.*

on" the provision of fabricated evidence to prosecutors prior to the grand jury proceedings. *See* P.Br. 31-32, 34 n.10.

Even where Plaintiff lacks direct evidence of precisely when each piece of fabricated evidence was presented to prosecutors, it is hardly a leap to infer that prosecutors must have been informed about, or provided with, such evidence. That Fountain and Sikirica also testified before the grand jury does not bring the transmission of such evidence to the prosecutors within the scope of "preparatory activity," immunized under *Rehberg*. This is because Fountain's (and Coonradt's) taking of evidence and presenting it to the prosecutors was not done in preparation for grand jury proceedings, but rather in the course of their normal investigatory duties. Likewise, Sikirica's autopsy report was not prepared for use with a grand jury, but in fulfillment of his duty under County Law § 674. CountyBr. SA1-SA2; *see also id.* at 27.

Accordingly, the fact that Fountain and Sikirica's "grand jury testimony paralleled information [they] gave in other contexts does not mean that [Plaintiff's] malicious prosecution claim was 'based on' [their] grand jury testimony. Rather it was based on [earlier] conduct that laid the groundwork for [Plaintiff's] indictment." *Coggins*, 776 F.3d at 113.

B.   Sikirica cannot avoid responsibility for his own misleading
     omissions by pointing his finger at the district attorney

Echoing its causation-cum-initiation argument, the County also argues that Plaintiff "wholly fail[ed] to acknowledge that it is the District Attorney who controls the presentation of evidence…." CountyBr. 13. This is a red herring as (i) Plaintiff's probable-cause argument does not rely on "the fact that Dr. Sikirica did not offer explanations of medical literature before the Grand Jury"; (ii) responsibility for any misleading omissions in Sikirica's autopsy report does not lie with the district attorney; and (iii) the absence of probable cause is a circumstance, not an act that must have been carried out by a particular individual.[12]

## VII.   A triable issue exists as to whether Defendants acted with malice

With respect to the fourth element, malice, Plaintiff explained that malice may be inferred from the absence of probable cause. P.Br. 34-35. In response, Defendants argue that "a jury cannot infer malice in every case in which probable cause is lacking." CityBr. 17 (quoting

---

[12] For this same reason, as long as the Court finds that one defendant's actions defeated the presumption of probable cause, that would be sufficient to find this element met as to all three individual defendants.

*Franco v Gunsalus*, 2023 WL 3590102, at *5 (2d Cir. May 23, 2023) (summary order)); CountyBr. 19 (same).

But Defendants cannot rely on a summary order in a case involving neither fabricated evidence nor a grand jury indictment to dispense with more than a century of consistent Circuit jurisprudence.[13] As this Court has explained, "[o]nce we find an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well." *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003); *see also, e.g.*, *Reisterer v. Lee Sum*, 94 F. 343, 346 (2d Cir. 1899) ("In an action for malicious prosecution the jury are at liberty to infer malice from facts that establish want of probable cause."); *N. Oil Co. v. Socony Mobil Oil Co.*, 347 F.2d 81, 84 (2d Cir. 1965) (same); *Morrissey v. Nat'l Maritime Union*, 544 F.2d 19, 29 (2d Cir. 1976) (same); *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) (same); *Ricciuti*, 124 F.3d at 131.

---

[13] The cited language from *Franco* relies on the state Court of Appeals' decision in *Torres v. Jones*. *Torres*, however, supports Plaintiff's position. *See Torres*, 26 N.Y.3d at 762 ("the plaintiff may show malice *and* overcome the presumption of probable cause with proof that the defendant falsified evidence in bad faith and that, without the falsified evidence, the authorities' suspicion of the plaintiff would not have fully ripened into probable cause.") (emphasis added)).

In any event, even if an inference of malice is not available in every case where probable cause is lacking, the same evidence showing that Coonradt, Fountain, and Sikirica fabricated evidence would also allow a jury to conclude that they were motivated by something other than "the ends of justice." *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (malice refers to "a wrong or improper motive, something other than a desire to see the ends of justice served"); *Kee*, 12 F.4th at 167 n.17 ("malice may be inferred if [the plaintiff] is able to demonstrate a lack of probable cause or … the fabrication of evidence").

## VIII. Because Summary Judgment on Plaintiff's Fair Trial and Malicious Prosecution Claims Was Improper, It Is Also Improper on Plaintiff's *Monell* and Conspiracy Claims

In his opening brief, Plaintiff explained that the District Court erred in granting summary judgment to Defendants on Plaintiff's *Monell* and conspiracy claim against Fountain, Coonradt, and Sikirica based on its findings with respect to the predicate constitutional violations. P.Br. 24, 27 n.6; *see also* SPA 27.

Plaintiff's argument is just as straightforward as the District Court's: if either Plaintiff's fair trial or malicious prosecution claims are

29

reinstated, Plaintiff's *Monell* and conspiracy claims become viable again and should also be reinstated.

Defendants argue that Plaintiff has waived these arguments by failing to brief them sufficiently. CityBr. 27-28; CountyBr. 25-26. Plaintiff recognizes that he could have presented his arguments more clearly and in greater depth. Nevertheless, the Court should exercise its discretion to consider them. *See McCarthy v. SEC*, 406 F.3 179, 186-87 (2d Cir. 2005). This is because it would be manifestly unjust for Plaintiff to lose potentially meritorious claims in an otherwise successful appeal. Nor would Defendants be prejudiced because they have actually briefed the issues[14] and, regardless, it can hardly be disputed that the District Court's logic dictates that a viable fair trial or malicious prosecution claim defeats summary judgment on Plaintiff's *Monell* and conspiracy claims. Nevertheless, Plaintiff would not object to Defendants submitting a sur-reply on this issue, if necessary.

---

[14] While Defendants have briefed the substance of each of these claims, issues would be best addressed first by the District Court on remand. *See Amaker v. Foley*, 274 F.3d 677, 681 n.1 (2d Cir. 2001) ("the district court is in a far better position to conduct a summary judgment analysis in the first instance").

### IX. Qualified Immunity Cannot Be Awarded on Summary Judgment Unless a Jury Could Not Find Any Conduct that Would Be Unreasonable

In his opening brief, Plaintiff explained that, while the District Court correctly found that the rights at issue were clearly established, it erred by improperly weighing the evidence in order to find that Defendants' conduct was objectively reasonable, entitling them to qualified immunity. P.Br. 40-41. In response, Defendants largely argue that their view of the facts mandates a grant of qualified immunity. *See* CityBr. 31-32; CountyBr. 24-25.

As the Supreme Court explained, however, in "resolving questions of qualified immunity at summary judgment," a court must ask "whether the facts, '[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]'" *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (alterations in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Therefore, "qualified immunity is unavailable on a claim for denial of the right to a fair trial where that claim is premised on proof that a defendant knowingly fabricated evidence and where a reasonable jury could so

find." *Morse*, 804 F.3d at 530. So, too, with a claim of malicious prosecution.

The bottom line is this: if Defendants' view of the evidence is correct, they are entitled to summary judgment on Plaintiff's claims and qualified immunity makes no difference. Whereas, if summary judgment is inappropriate because of triable questions that remain as to what Defendants did, it follows that qualified immunity is also inappropriate.

## Conclusion

For the reasons explained above and in Appellant's opening brief, this Court should vacate the judgment and remand the case for further proceedings in the District Court.

Dated: June 6, 2024
New York, NY

Respectfully submitted,

By:    _/s/ Max Rodriguez_

Max Rodriguez
LAW OFFICE OF
MAX RODRIGUEZ PLLC
575 5th Avenue, 14th Floor
New York, NY 10017
Tel: (646) 741-5167
max@maxrodriguez.law

Brett H. Klein
BRETT H. KLEIN, ESQ. PLLC
305 Broadway, Suite 600
New York, NY 10007
(212) 335-0132
bklein@kleincivilrights.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii), as modified by Local Rule 32.1(4)(B), because this brief contains 6,488 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Century Schoolbook style.

Dated: June 6, 2024        By:    */s/ Max Rodriguez*

                                        Max E. Rodriguez
                                        LAW OFFICE OF
                                        MAX RODRIGUEZ PLLC
                                        575 5th Avenue, 14th Floor
                                        New York, NY 10017
                                        Tel: (646) 741-5167
                                        max@maxrodriguez.law